All rise. The quorum is now in session. Please be seated. Madam Clerk, please call the case. 3-16-0216, the City of Peoria Appellee cross-appellant by Kimberly Janssen v. Peoria Area Advancement Group, LLC Appellant cross-appellee by Joseph Biscaglia. Please be seated. Thank you. Good afternoon. May it please the Court, Counsel? I'm Joseph Biscaglia representing the Peoria Area Advancement Group, which is the appellate cross-appellant, and my co-counsel here is Abby Clark Davis and Pamela Peoria. We are here, Your Honors, to at long last seek to recover a $1 million plus interest loan that PAG, which is the acronym, loaned that they made to the City of Peoria in an effort to help them acquire the waterworks that are owned by a private company, Illinois American Water, which in part as a result of PAG's assistance, they were able to get a court order from this court that they have a right to exercise this option every five years. That was a 2002 decision written by Justice Breslin, I think. I think so, Your Honor. Now, the loan to the City was originally done under an agreement in 1998. There are two agreements that issue in the case as the point goes. The 1998 agreement had an arbitration provision, and it would provide that if the city went forward with the purchase, the loan would be repaid plus interest. It wouldn't have to be repaid if there was a finding by the city that the purchase, based on the price that was established, was not feasible. In April of 2005, the city was deliberating this whole issue as to whether to go forward with the purchase. And how it's feasible. Your Honor, feasible is in the 1998 agreement. Our position is it's much different or can be much different than affordable, which is what the city actually at first said. But the definition is in the 1998 agreement. And there's a ruling from this court saying the 1998 agreement doesn't exist. That's correct. And feasible isn't really important at this point. Correct, except that the court has now ordered us to go to arbitration on the 1998 agreement, which is one of the reasons we're here. But both sides agree that arbitration... Well, at this point, Judge, after a long, long, circuitous, expensive route through the court system, we think the 05 agreement gives us the right to have the loan repaid, and that's our principal argument here today. That we asked for arbitration at the beginning of the case. The court, and I'll explain the context of the court... Who wants arbitration now? Nobody. Well, we have to get the loan back somehow. We have a right to seek it back somehow. But we think that this should end here in the appellate court because the 05 agreement, if you look at the language of it, the context of it, and the intent of it, it's clear that it meant that we would get the loan back if the one thing the city had to do they didn't do, which was to do the next step in the process, which was due diligence. The city, for some reason... I'm just trying to rush your argument a little, and maybe unfairly so, because I think you and opposing counsel agree that our prior decision says the 98 agreement has gone by the way, and arbitration is no longer an option. So we are here to construe the 2005 agreement, I think. Or am I fast forwarding too much? I think a little bit, because I think our initial position is... I have a way of doing that, so please... Well, let me talk about what we're saying here primarily. Can I go back to what you just said? Sure. I thought arbitration is out of the picture now. Well, not according to the trial court. The trial court has ordered us... I agree with the parties. Your Honor, if we have to go to arbitration, I guess we have to go to arbitration, but the purpose of this appeal is to end this case now. And we think the trial judge erred in ordering us to arbitration after this court had said a long time ago that... Are either one of you in... Is that the position of both sides? I'm not sure what their position is. I think that it's not clear what the... They seem to be saying that we have no right ever to be in any forum to get the loan paid back, which is absurd at bottom. But the fact of the matter is we are here seeking to convince you that we don't need to go to arbitration, that the O5 agreement gives us everything that we need to get the loan repaid. Okay? And I can follow you to that point. Okay. So we really need to focus on the 2005 agreement primarily. If you want to talk about arbitration later, fine, but I think at least two of our brains right now are set on considering the 2005 agreement for purposes of this oral argument. All right. So then let me quickly... The context, the language, and the intent that led up to the agreement is very important, and it's all in the record, and I'm going to start by doing that. The... I'll forget about the prior proceedings, and I'll get to them later. The fact here that kind of just the elephant in the room is that the city here, after arguing and representing to this court how the O5 agreement completely supplanted everything, was the only effective agreement between the parties, and that it was the only currently effective agreement. After representing that, when the case went back on remand from the interlocutory appeal, they completely did a 180. Now they were claiming that, no, it was void ab initio because there was a lack of appropriation. That was a pretty serious fact that they didn't disclose, that they were challenging that, but affirmatively represented the exact opposite. Now that kind of closes where we're at here, but the fact is that if you look at the context of where that led up to the O5 agreement, in April of 05, the city was deliberating over feasibility. And if, as I said before, if it was found to be not feasible, then the loan wouldn't have to be repaid. But on April 19th, at the city council meetings, the city agreed to accept the purchase price and go forward. At that point, the 98 agreement required them to return that money plus interest. And to make that clear, at that city council proceeding, the city said, okay, we're going to vote to go forward, but we want PAG to forgive their loan. So they're not going to be able to get their loan repaid, either knowing that they were liable for it under the 98 agreement or that they thought that they were liable for it. So they put that proviso in. We're going to go forward. We're going to accept the purchase price, but we're not going to pay the loan back. Three or four days later, the O5 agreement was executed in that context. And it had no arbitration provision in it, but what it said, it was acknowledging that PAG's position was, as indicated in the agreement, that, look, we'll agree to raise the loan, but you at least have to go forward with due diligence. And that's what we were fighting. And was there a $500,000 contribution that they had to pay to exercise due diligence, or am I misunderstanding that? No, there was a change in the loan terms earlier. But, no, if they didn't do due diligence, the loan would have to be repaid. And the interest rate was reduced from 9 to 6.9. Correct. And that was a little bit earlier. That was an amendment to the 98 agreement. So, now, if you look at that in context, I mean there were statements made by several people about how we would have to return the loan, so that's why the condition was imposed by the city. They said, you know, we're not going to approve this and go forward, so we have to pay that million dollars plus interest. PAG negotiated the right to say, okay, you don't have to repay it, but, you know, you have to go forward at least with this six-month due diligence to determine primarily whether, you know, the facilities of the water works and so on, which would require consultants and accountants and so on. So, now, let's look at the language of the 05 agreement. At least opposing counsel probably won't disagree that this is not necessarily a model of clarity, so I'm not arguing that, Your Honors. But what it does say, it starts with the preamble, which recites what I just said, that on April 19th that the city voted to go forward and PAG agreed to forego the return of the amount loaned pursuant to the loan agreement, the 98 agreement, and that PAG was willing to forego the return of the amount loaned pursuant to the vote by the city to pursue acquisition of the water works, and therefore they agreed, based on that, that the 98 agreement would be terminated and that PAG agrees to forego the return of the amount loaned in interest. That language and context just means that they were going to get the loan back. All we were asking the city to do was to do due diligence and we would waive it, but they never did that. They then changed their mind later. Three or four months later, after the 05 agreement, they just said, we're not going to do the due diligence at all, we're not going to do anything. Okay. And then still denied that they owed the loan back. Simply put, the only necessary corollary to PAG's agreement to forego the return of the loan was the city's agreement to pay back the loan. And if it failed to do the due diligence, they would have to do that. Taken as a whole, the 05 agreement simply means the city agreed to perform due diligence in exchange for not having to pay the loan back. Now, it doesn't say in the agreement, you know what, PAG's right to be repaid was already fixed as far as we're concerned because the city had voted to go forward with the purchase. In any event, the city, as demonstrated, thought that they owed the money back. And that's why they conditioned the approval of going forward on PAG's agreement to forgive the loan. Why would PAG agree to anything other than that to get the loan back? They already had the right to sue if they wanted to under the 98 agreement. So under the 05 agreement, PAG was not simply covenanting not to sue. That's not what this thing is called. It's not a forbearance agreement, a covenant not to sue agreement. It's an agreement. Okay. And it says that it doesn't say, for example, that PAG agrees only to forego the right to sue to get its money back. It just says they forego the right to get the loan. So the obvious corollary is we need to get it paid back. In our brief, we point to other provisions in the agreement that deal with this. But since I'm running out of time, I'll go on quickly to the next issue. Now, the other thing which supports PAG's interpretation, and this is where we get into the prior appeal, Your Honor, is that the city should be precluded from taking any position contrary to what I just argued. They represented to this court, but they did two things. In the earlier appeal, they not only didn't disclose that the validity of the 05 agreement was at issue to the court. They affirmatively represented to the absolute contrary. They said, for example, this is quotes from what they submitted to the court. The 98 agreement was superseded, canceled, and nullified by the 05 agreement. The 2005 agreement stands independently. There is no dispute between the parties that can arise from anything other than the April 2005 agreement. The 2005 agreement restarted the relationship between PAG and the city under new terms and conditions, and it's the only, quote, currently effective contract. And that was what the court based its opinion on. And they relied on those representations, put them back in the opinion through no fault of theirs, excepting what the city was saying, without ever having the disclosure that the validity of that agreement was at issue, which then they promptly, on remand, started to argue. So they, apart from what the agreement says, they should be precluded from saying anything other than that the 05 agreement permits us to get the loan back. They can't, even in a procedural context, every entity, whether they're a municipality or anybody else, has the same duties of procedure in the courtroom. And, you know, you can't do that under several different theories. Judicial stop, law of the case. This is the very case. This isn't another case where they said it. They said it in this very proceeding. It's men to hold. The court, I'm sure, is familiar with the old wrestling term. You can't take a position and have the whole litigation proceed down a dirt road, which is where we have been for many years, instead of taking the superhighway right to the point. And that's exactly what's happened here. So they should be precluded from making any argument to the contrary about the fact that the 05 agreement entitles us to get the loan paid back plus interest. Two minutes, okay. Now, I know that one of the things that other counsel is going to talk about is the fact that the other opinion was of limited relevance because it was only on arbitrability. And what I would ask the court, since I only have two minutes, is if you look at what this court said in the opinion, it really was dealing with a situation that we have, which is where you have an agreement that has an arbitration provision, and then a subsequent agreement which generally relates to the same issue. And here, the fundamental fact had to do with the purchase of these waterworks. And the court, in the opinion, debated between two cases, the Lehman case and the Nagle case. And if this had been disclosed to the court, that opinion could well have gone the other way, and they can't claim that it was no harm, no foul. If you look at what the court said, I'll just read from the court's interlocutor, from the appeal on the interlocutor. The court did a very careful deliberation, two cases which said opposite things. In the Lehman case and the Nagle case, it said, we find Lehman more analogous than Nagle. Picking up what the city argued, the 1998 agreement was knowingly canceled by the plain language in the 2005 agreement. That statement was in reliance on them picking the Lehman case over the Nagle case. Next, the April 2005 agreement states that it was intended to operate as a new agreement between the parties as to their duties to investigate the feasibility of the purchase of the water facility and the city's obligations to repay the loan. That's why the court ruled the way it did, because they never told you that the 2005 agreement, they were going to challenge or discovered that they were going to challenge for lack of appropriation. So, Your Honor, we ask that at this long stage, and the city has a couple of strikes on them already, I mean, with what they did in the prior proceedings, and then just reversing their decision to go forward and saying, well, you know, even though we agreed to do this, we're not going to do it, we're not going to do it to due diligence, and by the way, we're not going to pay your loan back. It's time to get this case over with, Your Honor, and we respectfully ask that you do this by a limited reversal of the trial court by saying that that 2005 agreement should be interpreted to mean that we get the loan back plus interest. Thank you very much. Thank you, Your Honor. Counsel, you may proceed. May it please the Court and Counsel, Kim Jansen on behalf of the City of Peoria. I did want to start with what I think is probably the easiest part of the appeal, and Justice Wright and Justice Carter have already alluded to this. Arbitrability is not an issue. Both parties agree, as we're sort of required to by that 2007 decision, that issues under the 2005 agreement are not subject to the arbitration clause. They're not subject to arbitrability. And we agree that the 2005 agreement is the only agreement currently before the Court. So I will leave it at that as far as the portion of the Court's order staying, proceeding in favor of our arbitration. I think parties are agreed that you should reverse that portion of the order. So turning to the remainder of the decision, part of the reason that the trial judge felt a need to stay pending a contemplated arbitration was based on a conclusion that, one, the trial judge concluded that the city had breached its obligations under that 2005 forbearance or due diligence or the 2005 agreement. What is your position on that ruling? In terms of whether the... Was there due diligence? I know you have some alternative theories about the agreement can't be enforced, but did you concede that you didn't exercise due diligence? We do not concede that. Did you, for purposes of summary judgment, make that concession? I do not believe we did. Okay. And I think whether or not the city complied with its due diligence obligations turns in part on how this Court would construe that 2005 agreement. The language of it refers to conducting in good faith the due diligence for the acquisition of the waterworks facility, completing the tasks substantially outlined in that exhibit, that consultant's estimate of costs for engaging in due diligence. Pat takes the position that this means that we needed to complete all of the tasks on that list for the full $1.29 million price tag. I would respectfully suggest that a more reasonable construction of that agreement, particularly in light of the good faith language, a construction that wouldn't render that sort of absurd, is in fact that the city needed to proceed in good faith along that process. Once the city determined, you know what, we're not going through with this purchase, it would make no sense to hold that the city was required to nevertheless go through the motions of all these other due diligence activities when there's no point to them. That would be a horrific waste of taxpayer funds, you know, requiring the city to spend all this money on something that wasn't going forward anyway, and it wouldn't do anybody any good. It certainly wouldn't have benefited Pat to require the city to, you know, go through the motions and jump through a bunch of hoops for a purchase that was not going to go through. But weren't they, I mean, when they voted on the 19th of April, I mean, they said, yeah, we're going to go through with it, and that's something that is part of agreeing to purchase this water is understanding now we're going to have to do this due diligence, and so there's going to be a cost maybe even if we back out later, even if we, you know, say a month later, well, gee, we shouldn't have done that or constituents are having a problem or something, that, you know, once you take that vote, now there's some obligations required in that if you want to be able to not have to pay that loan back. They agreed, they voted to proceed with due diligence, but they didn't vote to go through all the way up to the, you know, the moment of truth decision after six months of due diligence. They didn't commit to spending six months and $1.2 million of the city's funds toward due diligence. They voted at that April 19th meeting to accept the commission's purchase price. Essentially, the procedure was that the party submitted their information to the commission. The commission sets the fair value. The third party said, okay, that's the fair value that we're working with as we go forward. But even in that, I'm sorry. In the O5 agreement, the consideration was the city would conduct, in good faith, due diligence towards the acquisition, right? That's correct. Completing the task substantially as outlined by the city's consultants in that zip. That's correct. And then PEG, in consideration, agreed to forego the return of the amount loaned in interest. That's not all they agreed. They agreed to not institute any action on the, because of the termination of the loan agreement. Right. So they agreed to forego suit at that point to covenant not to sue, not to challenge the city's termination. Because if you go up a couple paragraphs up in the whereas, the parties both recognized that the city had, at that same April 19th hearing, voted under the provisions of the 1998 agreement to terminate pursuant to a provision in that 1998 agreement, which would have resulted in the city not being responsible. So at the point when the parties entered into the 2005 agreement, they potentially had a dispute about, okay, so the city says it terminated and owes nothing. PEG says, well, I don't know. We're not sure about whether you've dotted your I's and crossed your T's on the termination. They agree, you know what, let's not fight over that now. Let's go forward with this due diligence. You agree not to bring suit on, you know, raising any claims you might have regarding the termination. We agree we'll go forward with the due diligence. So if there's allegedly a breach in the one, what about the other? So if, in fact, there was a breach of the 2005 by the city, and I think that's where the trial judge kind of felt constrained and felt like, well, the only thing to do is send it to arbitration under the 1998 agreement, because nothing in this 2005 agreement says, you know, if the city doesn't do enough due diligence, now it's waived its rights under the 1998 agreement and now it's got to pay everything back. It doesn't say that in here. I think the trial judge was trying to figure out how to fashion a remedy, but in deciding that you would need to go through litigation under the 1998 agreement, the trial judge implicitly recognized that at this stage, PEG can't establish that it suffered any sort of injury, any sort of damages. So I think one of the alternative remedies that might have been appropriate would be rescission of the contract, effectively saying city breached, PEG is relieved of its obligations under the agreement as well. A wholly appropriate remedy, but it doesn't mean that the case needs to continue so that for purposes of this case, we now need to incorporate some separate proceeding under the 1998 agreement. So what would that mean, realistically, in your theory about this? So if the city breached, then that means that PEG wouldn't have to win. So then PEG wouldn't be bound by its agreement to forego any action, suit, demand, cause of action, etc., under the 1998 agreement. PEG at any time, for the same reasons that we've argued that the 2005 agreement is void under the prior appropriation rule, they could have raised that argument as well and said, you know what, we're going to sue you or file a demand for arbitration under the 1998 agreement, because you know what, we think you didn't terminate that properly and you do still owe us under that 1998 agreement. But they chose not to. They chose not to pursue any claims under the 1998 agreement, and they chose to put all their eggs in the 2005 agreement basket. And after this court rendered its decision, though, this court's decision in 2007 was only as to the arbitrability, and that was because the only claim that PEG had asserted in its demand for arbitration was a claim for the breach of this 2005 agreement. So PEG wanted to arbitrate under the 2005 agreement, saying the city failed to conduct due diligence. The city came in with a declaratory action and said, no, no, no, no. The 2005 agreement has no arbitration provision. PEG should not be subject to arbitration. We want a declaration on that, and we want to stay in and join arbitration on this claim that we breached the 2005 agreement. But PEG has not, in its arbitration demand, in its answer to the declaratory complaint, in its counterclaim, which is the matter that's presently at issue, it never raised a claim. It never pled facts, never offered evidence regarding any sort of breach or failure to fulfill the obligations under the 1998 agreement. It put all its eggs in the 2005 agreement basket and assumed that there was somehow some implicit right in that 2005 agreement that, well, if the city doesn't do diligence, we just automatically win any dispute that we might have had and might have presented under the 1998 agreement. We just get all the loan money back with interest and costs. Okay, I'm going to quote from the language of the 2007 agreement because I'm interested in your view of that language. I believe the court ruled any disputes over the due diligence of the determination of financial feasibility and the corresponding responsibility to repay the loan are governed by the 2005 agreement. Why, reading that language, would we go back to the 98 agreement? I agree. There's no reason to go back to the 98 agreement. And that's the only way that PAG can get anything is by going back to the 98 agreement. So that point is exactly why we believe that the trial court's order staying in compelling arbitration was an error because there's no reason to go back to the 98 agreement. PAG hasn't asserted claims under it. The only thing that's going to issue in this litigation is the 2005 agreement. This court prior panel held that that wasn't arbitrable, that that was to be resolved by the court. So what the requirements of the 2005 agreement are and what the remedies for any breach, even assuming the agreement were enforceable in the first place, that was to be decided by the trial court. So what about the loan? What happens to that? If you don't go back to the earlier agreement and if there's allegedly a breach in the 2005 agreement and the agreement they made in that their consideration was to forego the return of the loan and interest, does that mean they get to go back after the loan and interest? I don't know that they'd be able to do that at this point. They might have at some point in the past. All I know is that the 2005 agreement doesn't... They can't do it now because of what? I'd have to think it through. I think race judicata may well apply. There may be statute of limitations issues. But at this point we've been litigating for, I think, 12 years in this case. A long stay for discovery issues. But they wanted to try and jump over that 1998 agreement. They didn't want to have to deal with establishing whether or not the city's termination complied with the terms of the 1998 agreement. And they thought that, well, we can just use this 2005 agreement as a trump card and say that under this 2005 agreement we just automatically get whatever we might have had to prove a right to under the 1998 agreement. And it just doesn't work that way. The 2005 agreement just doesn't give them automatic rights to win on whatever claim they might concede under the 1998 agreement. If that's making sense. In a simpleton way, they loan a million dollars plus, right? Correct. And they don't get it back. They don't have to pay it back. The city doesn't have to pay it back because... Why don't we have to repay it? Well, initially our position is because we terminated under a provision of the 1998 loan agreement that relieves us of any obligation to pay it back under that section 1.02c1b, which provided that if you terminate under this provision, you're off the hook for the loan. The parties contemplated that from the very beginning in 98 that PAG may never get repaid for this loan. And they were essentially acting as an interest group. They really wanted the city to pursue this waterworks purchase. They were investing money here. Why would you have entered into the 2005 agreement if you terminated knowing you wouldn't have to pay it back? Why would you enter into a new agreement with them? Because I believe the parties already knew at that point that there might be a dispute between the parties about the effectiveness of the termination under that provision. And so rather than duke it out over that dispute at that stage, the parties agreed, you know what, let's not fight over this right now. Let's enter into the separate agreement instead. Two minutes, please. Can I direct your attention to more language? And this time it's in the 2005 agreement. You're arguing that PAG agreed to forego instituting any action, suit, or demand. But before that clause in paragraph 2 of the 2005 agreement, it says PAG hereby covenants and agrees to forego the return of the amount loaned. So if you breach, doesn't that mean they're entitled to be repaid? It does not. It doesn't say in here that the city agrees that but for this agreement, that PAG would be entitled to return of the amount loaned in interest. We certainly didn't, and I think that's in all of the whereas clauses that precede that agreement, as well as in the record as a whole, it's clear that the city believed that it already had no obligation to return the amount loaned in interest. We believe that we terminated appropriately under the terms of that agreement and were relieved of that obligation. PAG took a different position, and so it makes sense for them to say, you know, we'll forego the right we believe we have, but it doesn't, the fact that they think we're going to forego return of the amount loan is not the same as saying both sides agree that you actually have a right to return of the amount loan. I appreciate your input. It's something, you know, the benefit of oral argument is we get to kind of pierce your brain. And I hope I'm being clear. You are. Was this O5 agreement, was there a failure of consideration? I know this is coming out of left field, but is there a failure of consideration for this agreement? Well, no, I don't believe so. I don't believe so. Was there real consideration in Section 2? I'm sorry? Was there really consideration in Section 2? In that paragraph 2? I believe so because the city is agreeing to undertake certain obligations, so the city is certainly giving something up. And PAG is also giving something up because they're giving up a claim that they might have. It's not something that they've established. It's not a right that's conclusively been decided, but they're giving up the right to pursue that claim at this stage. So they're giving up the opportunity to bring a suit or most likely an arbitration under the 98 loan agreement, and the city is giving up, you know, committing itself to undertake obligations to engage in due diligence. With regard to the alleged breach, on August 23, 2005, there was a vote by the city council not to proceed with due diligence activities. Correct. What is your interpretation of that vote with respect to your obligation to exercise due diligence? Substantially complying with everything in that 12-page document. Absolutely. So what I think is interesting about that August 23 hearing is sort of the process before any of the votes occurred, Council Member Manning said, you know, let me give you a summary, a rundown of the due diligence activities that we've been engaged in for the past two months. And so they had obtained, if you read through that testimony, had obtained some additional financial information from the Water Commission that they did not have before and that they acquired the right to obtain pursuant to their due diligence activities. They acquired that information. They analyzed that information. They crunched the numbers themselves. They had differences of opinion amongst themselves as to, you know, what those numbers meant and whether it was a good idea to go forward based on those numbers, whether it was a bad idea to go forward. It was a good idea to go forward pursuant to the prior vote on April 19th, I might have the date wrong, of 2005. Because there was a vote to go forward. Can you say that again? There was a vote to go forward in April of 2005 before the agreement arose. And then they got some information and they decided and they took a vote in August saying, nope, not going to go forward with due diligence. If I'm understanding your answer correctly, you're saying that what was recited onto the record on August 23rd was enough for due diligence? I believe so. Did you point that out to the trial court when he was deciding? That was not raised before the trial court. That hearing was presented to the trial court and, in fact, had actually introduced that hearing into evidence. We did not highlight that particular testimony. Okay, so the trial court only had this vote not to go any farther with due diligence. And then after that vote, some contracts were rescinded, correct? I think the council voted not to spend $350,000 to retain an engineering firm. It seems like they were backing up from that. I don't think they were rescinding contracts. I believe they were declining to make the prior appropriations, I guess, to allude at least to that argument. That would have been necessary to enter into those contracts. And necessary to satisfy due diligence, correct, as contemplated by that 10-page document? I would disagree that that document required the city to conduct each and every one, fully exhaust all the- Is the language substantial? Is the text substantially as outlined? Yes. So do you think they did that, even considering everything that you didn't point out to the trial court that could have been found by sifting through all these documents? I think that, you know, I'd obviously, Peg, and your Honor, focus on the substantial, yeah, substantially as outlined. Which is why I'm asking you the question for your perspective on whether it's substantial compliance. And from my perspective, that has to be read in the context of that good faith requirement that's on there. So good faith does not require the city, after it's received that financial documentation from the Bar Commission, after it's run the numbers, and after it's decided, you know what, this is not a good idea. This is not something the city wants to spend hard-earned taxpayer money on. Good faith can't make require. Well, the Justice is referring to it as completing the test substantially as outlined. Were the tests that are outlined, what percentage were completed? That's hard for me to ascertain because, you know, there are things like RSP1, form commission. So it's not clear to what extent the activities that Councilmember Manning was describing fit into which of those categories, if any of them. Because the agreement, I mean, this is why I was asking about the failure of consideration. The agreement tends to say that the city, in good faith, with due diligence, good faith due diligence, towards the acquisition of the water works facility, that's the potential target. Completing the test, in other words, is a covenant to complete the test substantially as outlined by the city's consultants as set forth in Exhibit A. So there's Exhibit A. There's a list of tasks. And what's enough to complete, to be in good faith and do good work? And I would argue that's a question of fact. Question of fact? Yeah. And who would decide that's fact? I believe this would go to a jury, but I'm not positive. Yeah, I believe if the parties got past summary judgment, I believe the issue would have gone to a jury. Well, the suggestion then is it should be a fact question to sort of prevent summary judgment, wouldn't it? I agree. I agree. And so if, in fact, the agreement is enforceable at all, I think there is a fact question that would preclude finding that the partial summary judgment that the trial court did enter as to the breach of the due diligence agreement. The facts aren't disputed as to what happened. The material facts are not disputed as to how much the city did and when they voted not to go forward with due diligence. So there are no disputed material facts, only the conclusions to be drawn from those facts, I think. But we'll ponder it. Trust me, we'll ponder it. This is why you have the votes and I do not. And this is why we engage you in oral arguments. I know that you said that when the city didn't want to complete this due diligence, didn't want to waste any taxpayer money, any more of this money, but I still go back to when they took the vote on the 19th of April, they agreed to accept this purchase price with the comment that they would complete this due diligence and also that the resolution was conditioned by PEG agreeing to forgive the loan in exchange for the due diligence. So I guess I don't think you can get halfway through the process of due diligence and say, oh, we've wasted enough taxpayer money. You've committed to either, you know, complete the due diligence process or know that if you stop midway, that you're going to have to pay this money. You say, you know what, we're going to stop the bleeding right here, but know that now you're repaying that loan. Are you saying? But I think it's not now you're repaying that loan. Even if we haven't complied with the 2005 agreement, PEG doesn't get a free pass on establishing whether or not our termination of the 98 loan agreement was effective. Under the terms of that agreement, and again, this is something that they have not pled or argued in the trial court below or here, but under the terms of that agreement, the city did have the option to cancel, to terminate the loan agreement in a manner that would relieve it of its obligation to pay back the loan. And the city exercised that option. It terminated. So what is this language? Why is there any, if they terminated their obligation to repay that loan, why is there any discussion of any loan in this 2005 agreement if there's no loan? Because PEG disputed whether or not that termination was effective. That was contested prior to the entry of this 2005 agreement. By entering into the agreement, the parties agreed to put that dispute on hold. And now PEG wants to say that, well, we put that dispute on hold, and now the 2005 agreement, we think it's been breached, so we should just get to skip over the process where we prove that we had a right to repayment under the 98 loan agreement, and we should just deprive the city of any opportunity to define it. So what is it this agreement, the 2005 agreement sort of does? I mean, it doesn't say, you know, we're entering into this agreement under reservation of rights, but we don't believe that, you know, we believe this agreement has been terminated. I mean, it doesn't believe. Well, it does recite that the city has terminated, and it recites the provision pursuant to which it terminated, and it recites that PEG is foregoing the right to institute suit. So it's clearly acknowledging that this is a disputed issue going into the 2005 agreement. There's certainly nothing in that 2005 agreement in which the city says, yeah, we agree we're on the hook for the 1998 loan. Why would the city do that? No, I mean, I think they're not saying they're on the hook for it unless they don't complete due diligence. But I don't believe that's what the 2005 agreement says. No, the 2005 agreement says that we agree to conduct in good faith and due diligence, and then they set the pattern to complete the task substantially as outlined by the city's consultants, and set forth an Exhibit A. So Exhibit A is the appraisal rule. You look at Exhibit A, and you look at was there substantial compliance with the task on Exhibit A. And that's not just taking a vote. That means fact one, fact two, fact three, you know, down the list, right? And then on the other side, they say, in consideration of that, we won't institute any action suit or demand, suit in equity or law, on account of the city's termination of the loan agreement. That loan agreement you're referring to is the 98 agreement. That's correct. Okay. So they're giving up suing on that agreement, the 98 agreement. Correct. For the loan. Correct. If the city completes the other task. If they don't complete the other task. Then the city doesn't have to forego suing on the loan. Yeah. Yeah. It doesn't have to forego it. That is correct. They chose not to. They can sue under the 98 agreement. But you're saying. That's what they could have done. They chose not to. That's, I think. So earlier you said. So when they put their. There are other things that would prevent them from doing it, and you mentioned statute of limitations. So the time has gone by. Is that why you said it? I think that's probably the case at this point. I have not. It was affirmative defenses, right? Correct. And I have not researched that. They also. When they. And they were. Affirmative defenses weren't placed in this earlier record. As to the 98. As to what we're looking at on appeal. As to what this judge ruled on. Well, we did have affirmative defenses to their counterclaim under the 2005. And I know I've long since exhausted my time. But I think the chief among those was the prior appropriations rule. And I think. I think it's fairly clear how expensive. Complying with the due diligence obligations. If that really meant going through. And even if it meant even going through a portion of the tasks outlined in that exhibit. That was a huge expense. That the city would have been incurring. And the statute is very clear that the city cannot incur any expense. Legally. Without a prior appropriation by the legislative body. Complete the task substantially as outlined in the city's consultants. As set forth in the exhibit. By the city's consultants. Right. And. That's what the city agreed to. And then. Again. I know that time is ticking, ticking. But under the prior appropriation rule. That was a substantial expense. That the city would be incurring to comply with. Activities under that. And the prior appropriations rule is very clear. That you can't enter into a binding contract. This contract is not valid. Unless the city council has already appropriated the funds in which to carry it out. Were the funds appropriated before the 1998 agreement? I do not know. That's not a matter of the record. I would assume so. But. It's a matter I'm not aware of. Right. Okay. Thank you. Thank you. And thank you for your indulgence. For a long-winded argument. These cases are complicated. And we only get one chance to ask you questions. So you're both getting it shepherded. Okay. Yeah. So my first question to you is. If we agree with your point of view. That the 2005 agreement is enforceable. What is the interest rate? The interest rate says what? Where? Because in 98 it was 9. In 2004 it was reduced. Excuse me. In 98 it was 9 percent I think. In 2004 it went down to 6.9. There's a calculation that's out there. That computes. When the principal was still outstanding. At what rate? First at the 9 percent rate. Then at the lower rate. So we're not asking. Beginning in 2004. Whenever the amendment was. Four quarters of the 2005 document. The amount of the loan. And the amount of interest are not spelled out. I think in that regard. At least Justice Wright. It's implicit that it would be the terms of the 98 agreement. Because that's what we're talking. There's no other loan. You're arguing. Now you're doing what they did. You're arguing. We go under the terms of the 98 agreement. Which? Well. Well. The 05 agreement simply refers to the loan. And the interest. And there's no other loan and interest that's involved. I mean. So we can't look at anything else. But. Right. If I was sitting at a basketball game. I would say. You've got to call it the same way. From both sides. I see your point. But I think. It's a little different in that. The only loan involved. Is the loan that was on the 98 agreement. Now. I'll try to be brief. Because. You know. I didn't. Quite follow. The city's argument. In a couple of respects. And. You know. It seems to me. That they are doubling down. On what they did to the court. The first time. Now. They were the ones. That told the court. That the 05 agreement. Hadn't. Excuse me. The 98 agreement. Had absolutely nothing. To do with this case. Now. Counsel. Stands up. And tells you. That we never filed a claim. Under the 98. It's astounding. I mean. It's like. They. What they're really trying to do. Is deprive us. Of any remedy. Whatsoever. Through the machinations. Of the litigation process. So. I hope the court. Recognizes. That. You know. There's an arbitration. Demand pending. And the trial court. Ordered us to go to arbitration. This case should stop here. But. If it doesn't. We have a right. To argue to somebody. That we have. The loan. To be repaid. So. A lot of her argument. Is really just metaphysical. I mean. It's. It's almost offensive. That she would start saying. That what we did. If you read. The appellate court's opinion again. And come with. We could have been. Sanctioned. Probably. Had we filed a claim. Under the 98 agreement. Because the court. Made it clear. Over and over. And over again. That it was done. And had nothing to do with the case. And now. She's going to take that against us. After. That opinion was based upon. Their representations. Okay. Now. We were talking about. The whole. Due diligence thing. This was on. Summary judgment. Never. Ever. Ever. Did the city. In any way. Raise that there was. A genuine issue. Material fact. Over due diligence. Never. You can scour the records. All they really argued. Was that. That the agreement. Lacked appropriation. That's. That was their argument. They never raised anything about. It's ridiculous. Due diligence. You know. Because somebody said. One of the commissioners said. At the meeting. I guess. In August. That. You know. I thought about this some more. And you know. I mean. Come on. Really. That's completely off the table. Now. She didn't really. Get into. The lack of appropriation. But. I guess. If she's going to get more time. To come up. I don't know. If the court. Is going to do it that way. But. First of all. I've never seen. A stronger case. In my 41 year career. Where. Somebody should be barred. From making an argument. I mean. They represented. To this court. Over and over again. That this was the only agreement. That exists in this case. And then on remand. They changed their mind. It's barred under. A stop. A waiver. Mend the hole. Every other equitable. Reason. That you can possibly imagine. But. In addition to that. If. She's going to talk about it. The judge didn't even need. To go there. You don't even need. To decide the issue. Because. There are at least four. Five reasons. Why this didn't need. An appropriation. Some of them. Have already been mentioned. The fact is. This agreement. Either said. You're going to go ahead. With due diligence. In which event. You're going to have. The appropriation. For each one. Of these engineers. And consultants. That need to be hired. Or. You're not. And then. You've got to pay the loan back. There's no appropriation. Required. To get money back. If you get money back. That you're awkward. In the first place. I mean. I haven't seen any authority. On that one yet. But then. In addition. After the remand. Your. Your complaint. Or counter complaint. About the. Demanding the money back. Correct. Based on the old five three. I think that's. I think that's clear. Because that's what the court. Told us we had to do. At the time. Now. That didn't mean. That the arbitration. Demand is still out there. Some place. But. You know. For them to argue. That we're barred somehow. Which. In front of us. Is a. Is a plea. Alleging a breach. Of the old five agreement. By the city. And that's all. We're asking. Except for. We think the judge. Should have ruled. That there was a bar. Based upon. Estoppel. And. And. Law of the case. And so on. With respect to. Lack of appropriation. But we're. We're here. We're asking. This court. To just interpret. This agreement. The way it obviously. Needs to be interpreted. Again. It's not a model. Of clarity. But if you look at the facts. Here. There is no doubt. That the city knew. That it would have to pay us. A loan. And that's why they negotiated. This agreement. And we negotiated. The right. To give up the loan. Only if they did. The due diligence. And then astoundingly. Two months later. Without doing anything. They decided to reverse. Themselves. Well they stiffed us. Over. Again. On this. And all we're asking. Your honor. Is that you hold. And that's why we're here. This agreement. Provides for the return. Of the loan. Make that finding. In order. The city. To repay this loan. With interest. That's the only real issue. That we need to have. The trial court. Reverse that. Now. We can't possibly. Be thrown out. Of any remedy here. So I don't know. What the court's going to do. Right. I. I. I'm not even. Going to go there. I think the court is right. In my judgment. When a case is pending in litigation. That's. Stays the statute of limitations. I know that much. But the fact. Is. This is they're doubling down. Manipulating the litigation. Process. To prevent us from getting. A remedy here. They're the ones. That started the whole. Thing. About. How the 05 agreement was the. Only agreement. That ever has anything. To do with the case. And now they're going to claim statute of limitations. Because we are arguing over. The night. We might have been sanctioned. If we did that. So I suppose in the trial court. The 9080 agreement. They didn't actually have. Better released. Now for the city. Because there was that. Affordability of feasibility. Discussion. Because it's a complicated issue. But the fact is they knew. That when they voted to go forward. That they were going to be liable. For the loan. And that's why they. They went. And said we're not. Going to prove it. Unless. Peg agrees to give. Up the loan.   And that agreement. Documents. That very fact. And it isn't. A model of clarity. But after all. These years. We're not going to. Pay. After all. Of the enormous expense. It's undertaken. Is deserving of getting. That loan. Very simply. I. Aye. Aye. Aye. Aye.